UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80572-CIV-MARRA

MICHAEL IBEZIM,

       Plaintiff,

vs.

GEO GROUP, INC.,
a Florida corporation,

       Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant the Geo Group, Inc.'s Motion for Summary Judgment [DE 25].  The Court has carefully considered the motion and response, and is otherwise fully advised of the premises.  No reply was filed.

### Introduction

GEO Group, Inc., ("Defendant"), specializes in the private operation and management of correctional facilities.  Michael Ibezim, ("Plaintiff"), worked for Defendant for 17 years in various positions, including as a Substance Abuse Counselor, Lead Counselor, Program Director, Assistant Facility Administrator, and Deputy or Assistant Warden.  Plaintiff was terminated in December 2014 from his employment involuntarily.  Plaintiff, who is of Nigerian origin, contends that his termination was the result of race and national origin discrimination in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA")[1] He also alleges that his termination was the result of retaliation for filing internal complaints in violation of Florida's Whistleblower Act, § 448.102, Fla. Stat. ("FWA").  Finally, Plaintiff alleges that his termination violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*  Defendant claims Plaintiff was terminated because he violated its Standards of Employee Conduct by failing to disclose outside employment, including his involvement with an entity that was established to compete with Defendant's business.  Defendant seeks summary judgment as to all claims.

### Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. Pro. 56(a).

---

[1] Claims for discrimination under the FCRA are treated under the same legal standard as the federal Title VII claims.  Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.  *Harper v. Blockbuster Entertainment Corporation*, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So.2d 1005, 1009 (Fla. 1989); *Florida State Univ. v. Sondel*, 685 So.2d 923, 925 n.1 (Fla. Dist. Ct. App. 1996); *Kelly v. K.D. Construction of Fla., Inc.*, 866 F.Supp. 1406, 1411 (S.D. Fla. 1994)).

The parties may support their positions by citation to the record, including, among other things, depositions, documents, affidavits, or declarations.  *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians v. United States,* 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247–48).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. Pro. 56(c)(1).  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added).

*The nonmoving party must present evidence demonstrating that he can establish the basic elements of his claim.  Celotex*, 477 U.S. at 322.  Statements that are unsupported by the evidence must be rejected.  *See Cheatham v. DeKalb Cnty.*, 682 F.App'x 881, 884-885 (11th Cir. 2017) (affirming rejection of unsupported assertions made in plaintiff's facts); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("For factual issues to be considered genuine, they must have a

real basis in the record."); *EH v. City of Miramar*, 111 F. Supp. 3d 1307, 1318 n.4 (S.D. Fla. 2015) ("Plaintiffs must use the facts and testimony accurately and cannot state conclusions or factual assertions that do not comport with the record evidence of the case.").

After the nonmoving party has responded to the motion for summary judgment, a court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Thus, "[a] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 249).

## Undisputed Material Facts[2]

### I.    Defendant's Business

1.    Defendant specializes in the private operation and management of correctional facilities in the United States and abroad.  Declaration of Warden Joel Ziegler ("Ziegler Decl.").  DE 26, Ex. A.  As part of its business, Defendant contracts with federal, state, and local governments to provide security, immigration and detention services.  Ziegler Decl. at ¶3.

---

[2]  Plaintiff has not filed a statement of material facts as to which he contends there exists a genuine issue to be tried.  Since Plaintiff has not controverted Defendant's statement of undisputed material facts, the Court adopts those statements which are supported by evidence in the record.  *See* Local Rule 56.1(b).

2.      Defendant operates the Broward Transitional Center ("BTC"), where Plaintiff was last employed.  Ziegler Decl. at ¶4.  Defendant operates BTC through a contract with the U.S. Immigration and Customs Enforcement Agency ("ICE").  Ziegler Decl. at ¶4.

3.      ICE maintains a field office at BTC and employs a Supervisor Detention and Deportation Officer ("SDDO") to supervise and manage its operations.  Ziegler Decl. at ¶5.

4.      Defendant also operates the South Bay Correctional Facility ("South Bay"), where Plaintiff worked prior to BTC.  Plaintiff's Deposition testimony ("Pltf. Dep.") at 43:9-11.  *See* DE 26, Ex. B.

II.     Defendant's Policies

5.      At the time of his hire, and periodically throughout his employment, Plaintiff was given a copy of the current version of the Employee Handbook, for which he signed an acknowledgment of receipt.  Pltf. Dep. at 73:5-18; DE 26, Ex. C.

6.      In addition to Defendant's Equal Employment Opportunity Policies, Plaintiff also received Defendant's Standards of Employee Conduct.  Pltf. Dep. at 73:5-18; DE 26, Ex. C at 1-4, 9.

7.      Defendant's Standard of Employee Conduct contains a section titled "Outside Employment," which states:

> Any employee wishing to engage in employment outside the facility (including volunteer and self-employment) must seek approval in writing from the Facility Administrator. In cases where a clear conflict of

interest between facility position and outside employment exists or when the outside employment would bring disrespect to Defendant or the client, the Facility Administrator will determine, following a meeting with the concerned employee, Defendant's position on the matter, and will take appropriate action to resolve the matter. An employee shall not have a direct or indirect financial interest that conflicts with their Defendant duties and responsibilities.

DE 26, Ex. C at 3.

8.    Employees are also required to cooperate fully during investigations.  In this regard, Defendant's Standards of Employee Conduct states:

During the course of an official investigation, employees are to cooperate fully by providing all pertinent information they may have. During an investigation, failure by any employee to answer any inquiry fully and to the best of their knowledge will be grounds for taking disciplinary action. Any attempt to obstruct an investigation will subject the person to immediate disciplinary action, up to and including termination.

*Id.*

III.    Plaintiff's Employment With the Defendant

9.    Plaintiff was hired by Defendant as a Substance Abuse Counselor at South Bay in 1997.  Pltf. Dep. 30:10-12.

10.    In 2003, Plaintiff accepted a position as Assistant Warden of Programs at Moore Haven Correctional Facility ("Moore Haven") in Moore Haven, Florida.  Pltf. Dep. 39:25-40:2; 41:13-18.  Plaintiff transferred to Moore Haven from Michigan Youth Correctional Facility in Michigan, where he was an Assistant Warden.  Pltf. Dep. 37:13-20.

11.     Plaintiff considered his transfer from Michigan to Moore Haven a lateral transfer.  Pltf. Dep. 42:3-5.

12.     As Assistant Warden of Programs, Plaintiff's duties were to supervise and administer programmatic functions of the institution, such as vocational, academic, mental health, religious, and recreational programs.  Pltf. Dep. at. 41:19-25.

13.     Plaintiff testified that about six months after serving as Assistant Warden at Moore Haven, he was approached by a Regional Director regarding the opening of an Assistant Warden position back at South Bay, which position he accepted.  Pltf. Dep. at. 42-43.

14.     Plaintiff testified that the "assistant warden they had [at South Bay] [was] a little weak and they needed someone who could go over there and help in the population increase . . . and they truly, truly, would like me to go over there."  Pltf. Dep. at 42:8-23.

IV.     Plaintiff Accepts Assistant Warden Position at BTC

15.     On or about October 27, 2011, Plaintiff accepted a position to serve as Assistant Warden at BTC.  DE 26, Ex. D.  Plaintiff's offer letter stated the terms of his new position, and Plaintiff signed it below a line that states: "I have read and accept the terms of this offer."  *Id.*

16.     Plaintiff testified that Defendant's Assistant Regional Director, Ernie Dixon ("Dixon"), told him the company needed him to transfer to BTC because they needed his position for another Assistant Warden, Mr. Bassett.  They did not want to place

Mr. Bassett at BTC because the company felt BTC would not be a good fit for Bassett. Pltf. Dep. 52-53.  According to Plaintiff, Dixon told him that the transfer would be good for him and that he would mentor him.  Pltf. Dep. 52:10-53:16.

17.     The Warden at BTC, and Plaintiff's supervisor, was Alisa Lesane ("Lesane"), a Black female.  DE 26, Ex. F; Pltf. Dep. 60:5-8.

18.     During the time that Plaintiff worked at BTC, the on-site government official responsible for supervising that facility was SDDO Simon Lee-Fatt (Lee-Fatt").  Ziegler Decl. at ¶8.

19.     Lee-Fatt was not employed by Defendant and at no time did she have managerial authority over Plaintiff.  Ziegler Decl. at ¶8. Pltf. Dep. 149:1-150:2.

V.      Plaintiff's Relationship with Warden Lesane and Disciplinary Actions

20.     Plaintiff alleges that Lesane met his arrival at BTC with resistance.  *See* Complaint ("Compl."), DE 1, at ¶13.  Plaintiff testified that Lesane made things difficult for him because she believed that he was sent to BTC to take her job.  Pltf. Dep. 106:21-7.

21.     On May 4, 2012, Plaintiff filed an internal complaint with Defendant's Office of Professional Responsibility[3] ("OPR") against Lesane, asserting she falsely accused him of not reporting an employee misconduct claim, and created a hostile work

---

[3]  OPR is a centralized unit within Defendant that is responsible for conducting unbiased investigations into potential violations of law and/or company policy. Ziegler Decl. ¶25.

environment by mistreating and constantly harassing him. *See* Compl. at ¶15.

22.     OPR investigated Plaintiff's complaint and found that Plaintiff exhibited "disrespectful, argumentative, and borderline insubordinate behavior towards Warden Lesane." DE 26, Ex. E.

23.     On July 12, 2012, Plaintiff was issued a written reprimand for his insubordinate behavior towards Lesane, as well as for failing to report an employee misconduct claim. *Id*.

24.     About six months later, on January 28, 2013, Plaintiff was verbally counseled after an ICE official, COTR[4] Bryant Williams ("Williams"), expressed concerns that Plaintiff was not responsive and forthcoming to ICE's requests. DE 26, Ex. F; Ziegler Decl. at ¶10. Warden Ziegler told Plaintiff on the telephone about Williams' complaints, during which call then acting Warden Gartland was present. Pltf. Dep. 124:12-17; 125:16-13. During this time, Lesane was no longer employed at BTC. *Id*.

25.     In response to the telephone call, Plaintiff wrote Dixon an email. Dixon responded:

> I think our discussion yesterday was clear. I reiterated the items in your prior discipline resulting in a final reprimand needed to remain priority. I also advised you that the client expressed concern that you were not responsive and forthcoming to a request they made. It is your responsibility to ensure moving forward you do an excellent job of ensuring timely and complete communication with the client as required

---

[4] A Contracting Officer's Technical Representative ("COTR") is a business communications liaison between the United States government and a private contractor.

. . .

DE 26, Ex. F.

26.     Plaintiff testified that Williams wanted him kicked out of the facility and that is why he complained to Defendant.  Pltf. Dep. 133:5-9.

VI.     Defendant Again Receives Complaints From ICE
        Regarding Plaintiff and is Issued a Final Reprimand

27.     In January 2014, Joel Ziegler became Warden at BTC.  Ziegler Decl. at ¶2.

28.     On July 14, 2014, Plaintiff was issued a final reprimand after Lee-Fatt contacted Warden Ziegler and other Defendant officials to express that she had lost trust and confidence in Plaintiff and to complain about Plaintiff's unresponsive and unprofessional conduct.  Ziegler Decl. at ¶¶13-14.  On July 14, 2014, Plaintiff received a Final Reprimand which states:

> Our Client (ICE) recently raised concerns and complaints. ICE Officials have contacted me, Director Cauley and VP Donahue and stated they have a lack of trust and confidence in you as Assistant Warden of BTC. They also declared your demeanor is condescending and borders on rude. They have gone to such lengths as purposely creating a work around "rather than deal with him." SDDO, Lee-Fatt is aware you have openly expressed your displeasure with her by publicly complaining about her. She has cancelled meetings when you are Acting Warden to avoid working with you.

DE 26, Ex. G.

VII.    Plaintiff's Failure to Disclose Outside Employment

29.     In addition to the complaints made by ICE, the July 14, 2014 final reprimand also included Plaintiff's failure to disclose outside employment, which was triggered

after Plaintiff disclosed to Warden Ziegler an outside business venture he was involved in during a casual conversation.  Ziegler Decl. at ¶11.  After this conversation, Warden Ziegler reviewed Plaintiff's personnel file and discovered that it did not contain written approvals for outside employment.  Ziegler Decl. at ¶12.

30.     On July 18, 2014, Warden Ziegler instructed Plaintiff to document his voluntary and self-employment with outside entities pursuant to Policy 3.2.2, and requested that Plaintiff complete Defendant's outside employment forms.  Ziegler Decl. at ¶¶15-16.

31.     On July 24, 2014, Plaintiff submitted a Compatible Employment Request form to Warden Ziegler.  In the form, Plaintiff disclosed the following entities: (1) U.S. Department of Justice; (2) Palm Beach County Reentry Task Force; (3) VIPMEDIKA; and (4) Volunteer Services to Community Resources and Transition Centers.  DE 26, Ex. H.

32.     After conducting a cursory internet search regarding Plaintiff and these entities, Ziegler discovered various other entities that Plaintiff appeared to be associated with, but which were not disclosed on the forms, including Zibel Security Services, Community Resource & Transition Centers, and UMUOKIGWE, Inc. Ziegler Decl. at ¶17.

33.     On July 31, 2014, Warden Ziegler submitted a Referral of Staff Misconduct to OPR as a result of Plaintiff's apparent violation of Policy 3.2.2.  Ziegler Decl. at ¶18.

34.    OPR then proceeded to conduct an investigation regarding Plaintiff's volunteer and self-employment with outside entities.  As part of its investigation, OPR interviewed and spoke to various witnesses and reviewed records, including records filed with the Florida Secretary of State, Division of Corporations.  Ziegler Decl. at ¶19.

35.    On August 27, 2014, Plaintiff submitted a written statement to OPR where he stated that all of the ventures that he was actively involved in were duly reported. DE 26, Ex. I.  In his statement, Plaintiff disclosed UMUOKIGUA, which he described as a cultural organization, which he believed he was not required to disclose.  *Id*.

VIII.    <u>Plaintiff Sends Letter To Defendant</u>

36.    On September 17, 2014, while OPR's investigation into Plaintiff's failure to disclose all his outside employment was underway, Plaintiff sent a seven page letter to Defendant's corporate office regarding issues and events from years prior.  DE 26, Ex. J.

37.    In the letter, Plaintiff for the first time states that at some unidentified time

> Lee-Fatt, [who was not a Defendant employee] had once made comments to [him] about Nigerian citizens facing deportation - stating they are hard headed and uncooperative.  That it would usually take a whole ICE squad to get them to board their scheduled deportation flights.  She has also expressed they are usually condescending[,] armed with a demeanor that borders on being rude and that she has a clear lack of trust for Nigerians.  Furthermore, that ICE agents must come prepared for a good fight whenever Nigerians are scheduled for involuntary removal.

*Id*. at 6-7.  During his deposition, Plaintiff testified that he did not recall Lee-Fatt

making any other comments regarding Nigerians, aside from that one alleged comment above. Pltf. Dep. 152:3-8.

IX.     The Completion of OPR Investigation and Plaintiff's Termination

38.     On November 19, 2014, OPR completed its investigation. Ziegler Decl. at ¶19. As detailed in its report, OPR concluded that Plaintiff failed to disclose his involvement in the following active entities: (1) Transitional Living Community Centers, Inc. (Plaintiff is listed as an officer), (2) Zibel Security Services, Inc. (Plaintiff is listed as the CEO), (3) Professional Tax Group (Plaintiff is listed as a manager), and (4) UMUOKIGUA, Inc. DE 26, Ex. K at 5 of 6.

39.     The investigation also revealed that Transitional Living Community Centers, Inc. was established for a purpose related to the reentry of inmates, which is a violation of Defendant's Code of Business Conduct and Ethics Policy, Policy 3.2.1 (2). *Id*. at 6 of 6.

40.     On November 19, 2014, Defendant sent Plaintiff a letter informing him that OPR had completed its investigation concerning his violation of Defendant Policy 3.2.2.(5), Standards of Employee Conduct. The letter informed Plaintiff that the investigation sustained the allegations made against him for failure to report outside employment. Plaintiff was informed to contact OPR Director of Investigation, Carmine Marino if he had any questions. DE 26, Ex. L.

41.     On November 20, 2014, Warden Ziegler spoke to Plaintiff via telephone. Ziegler Decl. at ¶20. During this conversation, Warden Ziegler informed Plaintiff that

OPR completed its investigation and that it had sustained the allegations against him. *Id*.

42.     As a result of OPR's findings that Plaintiff violated Defendant's Standards of Conduct, on November 20, 2014, Warden Ziegler completed a Disciplinary Action Form recommending Plaintiff's termination, which was approved by Defendant's corporate office on December 2, 2014.  Ziegler Decl. at ¶21.

43.     On December 9, 2014, Defendant notified Plaintiff that his employment was involuntarily terminated for Unbecoming Conduct.  DE 26, Ex. M.

X.     Plaintiff's FMLA Requests

44.     On December 27, 2012, Plaintiff requested and was approved FMLA leave, which he took for a period of six weeks.  Pltf. Dep. 124:12-17.

45.     Two years later, on November 18, 2014, Plaintiff received a FMLA packet from Human Resources which he completed seeking FMLA leave due to his being hospitalized for having caught malaria.  DE 26-14, Ex. N.  Plaintiff submitted the FMLA paperwork to Defendant on November 24, 2014, after he had already been informed that OPR concluded that he violated Defendant's outside employment policies and after Warden Ziegler submitted Plaintiff's termination request.  UF 41-42.

XI.     Plaintiff Files a Charge of Discrimination Against Defendant

46.     On September 30, 2015, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Relations and the U.S. Equal Employment Opportunity

Commission.  DE 26, Ex. N.  Plaintiff states in the Charge's Discrimination Statement that he was discriminated against on the basis of his national origin (Nigerian), and that Defendant retaliated against him for having complained of and opposed discrimination in violation of Title VII and FCRA.

In his narrative, Plaintiff explains that for the first 15 years of his career working for Defendant, his performance evaluations consistently rated him as either "commendable (clearly exceeds standards)" or "distinguished (far exceeds standards)."  From 2004 to 2011, he served as the Assistant Warden at GEO's South Bay Correctional Facility in South Bay, Florida.  On the Charge, Plaintiff indicates that the earliest date discrimination took place was in 2011.

Plaintiff asserts that about October 2011, he was pressured by Defendant to accept a transfer to BTC as Assistant Warden.  He asserts that the reassignment was to make room for a Caucasian male, William Bassett, to become Assistant Warden at South Bay.  Plaintiff states that Mr. Bassett was less qualified than he was and had been with the company for less than one year at the time.

Plaintiff alleges that as soon as he transferred, he immediately experienced animosity from his superiors, including from Williams and Lee-Fatt.  On September 18, 2014, Plaintiff states he filed a formal complaint with Defendant "describing in detail the unfair and discriminatory treatment [he] had received over the past two years at BTC."  DE 26-14, Ex. N.

## Discussion

***Plaintiff's Failure to Comply with Local Rule 56.1***

Defendants filed their summary judgment motion with a Statement of Undisputed Material Facts [DE 25, 26].  Plaintiff filed a response along with an eight paragraph affidavit which reiterates his motion and solely consists of allegations and conclusions of law [DE 27].  He did not file a statement of disputed facts.  Accordingly, Plaintiff's response to Defendant's Motion for Summary Judgment is procedurally improper and violates the applicable local rule.  Plaintiff fails to admit or deny Defendant's specific factual assertions, and also does not attempt, in any way, to isolate factual disputes for the Court.

As the plain language of Local Rule 56.1 states, "(a): A motion for summary judgment **and the opposition thereto** shall be accompanied by a statement of material facts as to which it is contended ... there does exist a genuine issue to be tried[.]" S.D. Fla. L.R. 56.1(a) (emphasis supplied).  The local rule requires that such statement "(1) Not exceed ten (10) pages in length; (2) Be **supported by specific references** to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; and (3) Consist of separately numbered paragraphs." *Id*. (emphasis supplied).

The local rule further provides that "[s]tatements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant[.]"  It also provides that

Page 16 of  34

"additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts[.]"

Failure of a respondent to file a statement of disputed facts, in the format as required above, causes "[a]ll material facts set forth in the movant's statement" to be "deemed admitted unless controverted by the opposing party's statement[.]" S.D. Fla. L.R. 56.1(b); *see also* Fed. R. Civ. P. 56(e)(2) (if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion).

Local Rule 56.1 exists for a critical reason – "to make review of summary judgment motions less burdensome to the Court." S.D. Fla. L.R. 56.1 cmts. (2008). The point is to prevent the Court from having to search through the record and attempt to decipher on its own whether or not material factual disputes truly exist. Plaintiff's response is contrary to the local rule and, in effect, requires the Court to do his job.

The local rule is unambiguous. Because Plaintiff did not follow a basic procedural requirement of Local Rule 56.1, the Court has the discretion to deem admitted all of Defendant's undisputed facts which are supported by evidence in the record. *Tim Hortons USA, Inc. v. Singh*, Case No. 16-CV-23041, 2017 WL 1326285, at *4 (S.D. Fla. Apr. 5, 2017) citing *Johnson v. Sch. Bd. of Broward Cty.*, Case No. 07-60797-CIV, 2008 WL 5427789, at *2-3 (S.D. Fla. Dec. 30, 2008) (finding local rule

requires that a statement of disputed facts include reference to supporting evidence and deeming facts disputed by plaintiff but not supported by record evidence as admitted).  The Court may then enter summary judgment in Defendant's favor as Plaintiff's defective response essentially leaves the Court with "the functional analog of an unopposed motion for summary judgment."  *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1343 (S.D. Fla. 2015) (admitting facts from defendant's undisputed material facts statement after reviewing the record based on plaintiff's violation of Local Rule 56.1); *Regions Bank v. 62' Ocean Sport Fish*, No. 13–20966–CIV, 2014 WL 4055707, at *2 (S.D. Fla. Aug. 14, 2014) (admitting undisputed facts in plaintiff's statement supported by the record based on defendants' violation of Local Rule 56.1).  Because Plaintiff has not filed a statement of disputed material facts, the Court, as noted above, has no other facts than Defendants to consider.

*Plaintiff's Affidavit*

"An affidavit . . . used to . . . oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4). There is no evidence presented in Plaintiff's Affidavit.  DE 27-1.  It merely reiterates some of the arguments presented in his Response and makes legal conclusions.

When deciding a motion for summary judgment, a federal district court may consider only admissible evidence.  See *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) ("Evidence inadmissible at trial cannot be used to avoid

summary judgment."); *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001) ("When an affidavit submitted . . . in opposition to[] a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit . . . .").

***Plaintiff's Failure to Comply with Local Rule 7.1(c)(1)(A)***

Pursuant to the deadlines imposed by the Court's Scheduling Order, Defendant filed its Motion for Summary Judgment and Concise Statement of Undisputed Material Facts on February 9, 2018. *See* DE 25, 26. Plaintiff filed his opposition to Defendant's Motion for Summary Judgment, without having sought any extension of time, 27 days later, on March 8, 2018. Local Rule 7.1(c)(1)(A) provides that

> If the motion or memorandum was filed via CM/ECF or served by hand-delivery, count fourteen (14) days (seven (7) days for a reply) beginning the day after the motion, response, or memorandum was filed via CM/ECF or certified as having been served by hand-delivery. The last day is the due date. If the last day falls on a Saturday, Sunday, or legal holiday, the period continues to run until the next business day, which is the due date for the opposing memorandum or reply.

Applying this Rule to the facts of this case, Plaintiff's response was due on February 23, 2018. It was filed 13 days after the deadline established by the Local Rules.

Plaintiff's response is the subject of a Motion to Strike because of its untimely filing. *See* DE 28. The Court finds it unnecessary to take this step given that, even considering Plaintiff's response, summary judgment will be granted in Defendant's favor.

### *Exhausting Administrative Remedies and Timing*

Before bringing suit under Title VII or the FCRA, potential plaintiffs must first exhaust their administrative remedies. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001); Fla. Stat. §760.11(1). First, a potential plaintiff must timely file a charge of discrimination with the appropriate agency. In Florida, a deferral state, Title VII requires charges of discrimination be filed with the EEOC within 300 days of the discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Thomas v. Fla. Power & Light Co.*, 764 F.2d 768, 769-70 (11th Cir. 1985). The FCRA requires the filing of a charge of discrimination with a state commission or the EEOC within 365 days of the alleged discrimination. Fla. Stat. §760.11(1).

In light of Title VII's exhaustion requirement that a plaintiff file a charge with the EEOC before filing a complaint in federal court, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum Res* ., 355 F.3d 1277, 1280 (11th Cir. 2004) (quoting *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2002), overruled en banc in part on other grounds by *Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003)). In interpreting the filing requirements of Title VII, the Supreme Court held in *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("*Morgan*") that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." For this reason, "discrete discriminatory acts are not actionable if time barred, even when they are related to

acts alleged in timely filed charges." *Id*.  Discrete discriminatory acts include "termination, *failure to promote*, denial of transfer, or refusal to hire." *Id*. at 114 (emphasis added).  Since Plaintiff filed his Charge on September 30, 2015, he cannot maintain an action for a discrete discriminatory act  that occurred prior to September 30, 2014, at the latest (giving Plaintiff the most time available under FCRA).

As far as Plaintiff's national origin discrimination claim, that addresses acts "different in kind" whose "very nature involves repeated conduct," such as "'discriminatory intimidation, ridicule, and insult.'" *Morgan* at 114-16 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Thus, national origin discrimination claims are "based on the cumulative effect of individual acts." *Id*. at 115; *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008).

**Plaintiff's Claim of Race or National Origin Discrimination**

Under Title VII, Plaintiff must demonstrate by a preponderance of the evidence that the actions taken by his employer were "more likely than not based on the consideration of impermissible factors" such as race or national origin.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal quotation marks and citation omitted).  In so doing, Plaintiff may prove his claim with direct evidence, and absent direct evidence, he may indirectly prove discrimination under the burden-shifting analysis created in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Plaintiff purports to establish discriminatory intent by arguing disparate treatment. Under this paradigm, Plaintiff has the initial burden of proving by a preponderance of the evidence a *prima facie* case. For a claim alleging disparate-treatment discrimination, a plaintiff makes out a *prima facie* case by showing that he is (1) a member of a protected group; (2) qualified for the position or entitled to the benefit sought; (3) subjected to adverse employment action; and (4) that the employer treated similarly situated employees outside the class more favorably.[5] *McDonnell Douglas*, 411 U.S. at 804; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff asserts he states a *prima facie* case of discrimination by showing (1) that he is black, (2) that he was qualified for the position as Warden, (3) that he was sent to another facility and given more responsibility for which he was not compensated, and (4) that the position was ultimately filled by a white man. DE 27 at 3. Plaintiff fails to make out a *prima facie* case on three of the four required elements.

Plaintiff cannot meet the second prong of his *prima facie* case because he cannot establish that he was qualified for the position of Warden, or even, for that matter, for the Assistant Warden position he held. While he may have had great evaluations up until 2011, the record is replete with evidence that Plaintiff was not meeting Defendant's performance expectations once he transferred to BTC in 2011.

---

[5] There being no discussion by either party regarding the first element, it appears the parties tacitly agree Plaintiff is a member of a protected group.

Defendant's client, ICE, complained to Defendant that Plaintiff was unprofessional and unresponsive with its officials.  Undisputed Facts ("UF") at ¶¶ 24, 28.  Defendant on its own accord reprimanded him for being disruptive, insubordinate, and argumentative to his commanding supervisor.  UF ¶¶ 22, 28.  Because the undisputed evidence establishes a pattern of performance deficiencies, Plaintiff cannot meet the second prong of his *prima facie* case.

Plaintiff cannot meet the third prong of his *prima facie* case because he has not shown that he suffered an adverse employment action when he accepted a transfer to BTC in 2011.  While Plaintiff transferred from one of Defendant's facilities to another, he remained an Assistant Warden and he retained the same benefits and pay.  UF ¶15.  The transfer did not involve a demotion or a loss of prestige and there is no evidence that Plaintiff was given more responsibility.

An adverse employment action is "an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000) (citation omitted).  In order to demonstrate that he has suffered an "adverse employment action" under Title VII, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment."  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239, 1241-42 (11th Cir. 2001) ("*Davis*") (emphasis in original) ("Employer criticism,

like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance.... Simply put, the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely - without more - establish the adverse action necessary to pursue a claim under Title VII's anti-discrimination clause"); *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008).

Although Title VII does not require proof of direct economic consequences, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment as "viewed by a reasonable person in the circumstances," regardless of the employee's subjective view. *Davis*, 245 F.3d at 1239 ("the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."). Thus, an action is not an "adverse employment action" within the context of Title VII "merely because the employee dislikes it or disagrees with it," but rather, the action must be "objectively adverse." *Doe v. DeKalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir. 1998).

"A transfer can constitute an adverse employment action for Title VII purposes ... if it involves a reduction in pay, prestige or responsibility." *Hinson v. Clinch Cnty, Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000); *Burlington Northern & Santa Fe Railway Co.*, 548 U.S. 53, 70-71 (2006) (transfer of position requiring employee to take on more arduous and dirtier work with less prestige sufficient to constitute an adverse action); *see also Cook v. Gwinnett Co. Sch. Dist.*, 414 F.3d 1313, 1317 (11th Cir. 2005) (finding adverse action for loss of prestige where plaintiff lost the additional prestige and responsibilities that came with being a team leader); *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1303 (11th Cir. 2005); *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir.1998).

However, a "purely lateral transfer ... if not accompanied by any change in position, title, or salary, and that does not require significant retraining or result in loss of prestige or opportunities for promotion is not an adverse employment action." *Ramsay v. Broward County Sheriff's Office*, No. 05–61959–CIV-MARRA, 2007 WL 6861073, at *9 (S.D. Fla. May 24, 2007) (Marra, J.) citing *Shah v. Clark Atlanta University, Inc.*, 1999 WL 1042979 (N.D. Ga. 1999); *Graham v. Florida Dept. of Corrections*, 1 F. Supp. 2d 1445, 1450 (M.D. Fla. 1998) ("Plaintiff's unhappiness with the reassignment does not make the reassignment adverse."). It is not the Court's role to second-guess Defendant's business decisions in changing Plaintiff's work location. While Plaintiff complains that he was given more work at BTC, Plaintiff has not presented any evidence to support that claim.

To the extent Plaintiff argues that his lateral transfer from South Bay to BTC was an adverse employment action, the Court concludes that Plaintiff's lateral transfer was not an adverse employment action because there is no evidence that the transfer altered his compensation, terms, conditions, or privileges of employment. *Stavropoulos v. Firestone,* 361 F.3d 610, 616–17 (11th Cir. 2004); *see, also, Davis,* 245 F.3d at 1244 ("Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities"); *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir. 1986) (noting that federal laws against discrimination are "not a shield against harsh treatment at the work place" or personal animosity); *Gloetzner v. Lynch,* 225 F. Supp. 3d 1329, 1363 (N.D. Fla. 2016) (Deputy's lateral transfer or reassignment to another geographic location at the same grade and with the same duties did not constitute an adverse employment action).

Finally, Plaintiff cannot meet the fourth prong of his *prima facie* case because he presents absolutely no evidence of a similarly situated employee outside of his protected class who was treated more favorably (for example, of a non-black Assistant Warden who failed to report outside employment and was not terminated). In his EEOC narrative, Plaintiff mentions that a white man, Mr. Bassett, was given Plaintiff's position of Assistant Warden at South Bay after Plaintiff was transferred to BTC.  Assuming this is Plaintiff's attempt to identify a white comparator, this attempt fails as a matter of law because, besides there being no sworn or admissible evidence

presented regarding Mr. Bassett, Plaintiff's own narrative illustrates that Mr. Bassett was not treated more favorably than he was.  Mr. Bassett was not promoted to the position of Warden, but rather, was simply given the same position as that held by Plaintiff.

Lastly, Plaintiff asserts in his response to the Motion for Summary Judgment that Defendant discriminated against him because of his race "by passing on promotions to less qualified Caucasian employees when Plaintiff was more qualified and ready for promotion to a Warden's position."  DE 27 at 2.  This argument is rejected for any number of reasons.

In his Complaint, Plaintiff asserts he was passed over for a promotion between 2004 and 2011.  Compl. ¶¶ 8, 9.  As discussed above, this claim consists of an alleged discrete discriminatory act, and is thus time-barred because it occurred prior to September 30, 2014 (within 365 days of the FCRA charge of discrimination).  Additionally, Plaintiff presents no evidence, other than his good and excellent performance reviews prior to his move in 2011 to BTC, to support his claim that he was qualified for a promotion to the position of Warden.  However, his performance reviews did not remain commendable and distinguished.  The undisputed evidence shows that beginning at least by July 2012, Plaintiff was reprimanded for unprofessional, disrespectful, borderline insubordinate behavior and for being unresponsive to ICE requests.  UF ¶¶22-23, 25, 28.  And, as discussed above, he has not presented any admissible evidence that a similarly situated employee outside of

his class was promoted to the position of Warden.  Therefore, summary judgment will be granted in Defendant's favor as to Plaintiff's claim of discrimination on the basis of being transferred to BTC, and not being promoted to the position of Warden.

**Plaintiff's Claim of Retaliation**[6]

Plaintiff argues that "Defendant's actions (1) forcibly changing the Plaintiff's job site and responsibilities, (2) doubling the Plaintiff's responsibilities with the same pay rate, and making statements that caused other employees to treat Plaintiff in a hostile manner amounts to unlawful retaliation in violation of Title VII."  Response, DE 27 at 6.

A plaintiff asserting a retaliation claim under Title VII must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action.  *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  Here, Plaintiff has established that he suffered a materially adverse action when he was terminated.  But his claim fails as a matter of law because he makes no claim and there is no evidence of his having engaged in statutorily protected conduct.

Title VII's anti-retaliation provision prohibits retaliation when an employee "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has

---

[6] Plaintiff's retaliation claims under FCRA, FWA, and Title VII are analyzed under the same analytical framework.  *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000) (Title VII retaliation framework applies to FWA); *see also,* footnote 1 *supra*.

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a).  Plaintiff contends that he was terminated after he made an internal complaint against former Warden Alisa Lesane (Pltf. Dep. 191:9-9), and because he submitted a letter (dated September 2014) to Defendant's corporate office, wherein he complained about some reprimands and the complaints against him for unprofessional conduct (Pltf. Dep. 191:13).

Aside from the fact that the internal complaint against Warden Lesane is time-barred, the internal complaint does not rise to the level of statutorily protected activity because it does not involve any conduct that violates Title VII.  Instead, the internal complaint referred to Plaintiff's complaints about Warden Lesane's management style.  UF ¶¶ 20-21.

Plaintiff's September 2014 letter to Defendant's corporate office is no different.  The letter does not raise allegations of unlawful discrimination or illegal conduct by Defendant.  Instead, the letter stated Plaintiff's objection to the July 2014 Final Reprimand that was issued based on ICE's complaints regarding Plaintiff's unprofessional conduct.  *See* DE 26, Ex. J ("I am once again shocked by a recent and another unfair characterization of my person which has resulted in the issuance of yet another final reprimand warranting my need to question if this is an orchestrated attempt to get ride of me").  *Id*. at 5 of 7.  None of this conduct satisfies Plaintiff's burden of establishing he engaged in statutorily protected activity under Title VII.

To establish statutorily protected conduct under Title VII's opposition clause, Plaintiff must "show[ ] that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). He must show both that he subjectively believed that Defendant engaged in unlawful discrimination and that "his belief was *objectively* reasonable in light of the facts and record present." *Id*. (emphasis in original). Plaintiff need not prove that the conduct he opposed was actually unlawful, *id.*, but the reasonableness of his belief that Defendant "engaged in an unlawful employment practice must be measured against existing substantive law." *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

Even if Plaintiff subjectively believed that Defendant unlawfully discriminated against him after he made the internal complaints, his belief could not have been objectively reasonable. *Akins v. Fulton County*, 420 F.3d 1293, 1301–02 (11th Cir. 2005) (holding in First Amendment retaliation case that unwarranted reprimands, a negative work evaluation, threat of job loss through dissolution of the plaintiffs' division, threat of suspension without pay, removal of job duties, and exclusion from meetings did not constitute adverse employment action, either singly or when considered in the aggregate). Consequently, his retaliation claim fails as a matter of law. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244–45 (11th Cir. 2010).

**Plaintiff's FMLA Interference Claim**

In his response, Plaintiff asserts that he forwarded to Human Resources a completed FMLA Medical Certification package on November 25, 2014.[7]  Then, 12 days later, on December 6, 2014, Plaintiff was notified that his employment was involuntarily terminated immediately.  Plaintiff argues that Defendant is strictly liable for having fired him during his FMLA leave.  Besides the fact that Plaintiff has not presented any evidence that his application was received or that he was ever put on FMLA leave, this contention is contrary to the law.

Unlike the right to commence leave, an employer can deny the right to reinstatement in certain circumstances because a U.S. Department of Labor regulation qualifies this right.  *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000) citing *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1157 (7th Cir. 1997) (holding an employer may terminate an employee on FMLA leave as part of a corporation-wide reduction-in-force).  An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  29 C.F.R. § 825.216 (2013); *id*.  The Eleventh Circuit has held that when an "eligible employee" who was on FMLA leave alleges his employer denied his FMLA right to reinstatement, the employer has an opportunity to demonstrate it would have discharged the

---

[7]  That application is attached to Plaintiff's response as Attachment 12.  DE 27.

employee even had he not been on FMLA leave. *Id*. In the instant case, it is undisputed that Plaintiff submitted his FMLA paperwork after he had already been informed that OPR concluded that he violated Defendant's outside employment policies. It is further undisputed that Plaintiff submitted his FMLA paperwork *after* Warden Ziegler submitted a request for Plaintiff's termination. Therefore, even if Plaintiff was on FMLA leave, Defendant was justified in terminating Plaintiff when it did for his having violated Policy 3.2.2.(5), Standards of Employee Conduct. UF ¶40.

The Court also notes that Plaintiff has failed to present evidence of pretext sufficient to rebut Defendant's proffered reason for his termination. Defendant terminated Plaintiff for unbecoming conduct which included Plaintiff not reporting certain outside employment in violation of Policy 3.2.2., Standards of Employee Conduct. In addition, Plaintiff had at least two unacceptable job performance reviews. In response to these, Plaintiff has presented nothing more than his own explanations of his job performance and why Defendant's decisions were unfair to him under the circumstances. There is no evidence that Plaintiff's termination was related to his request for FMLA leave.

To show pretext, a plaintiff must "'come forward with evidence, *including the previously produced evidence establishing the prima facie case,* sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (quoting *Combs v. Plantation Patterns*, 106

F.3d 1519, 1528 (11th Cir. 1997) (emphasis added).  The close temporal proximity between Plaintiff's request for leave and his termination — 12 days — is insufficient to establish pretext by itself.  *See Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (Plaintiff's evidence of close temporal proximity standing alone was insufficient to establish pretext); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244–45 (11th Cir. 2001) (same).  Because Plaintiff has not shown that Defendant's stated reason for terminating his employment was pretextual, Defendant is entitled to summary judgment.  *See Daugherty v. Mikart, Inc.*, 205 F.App'x 826, 828–29 (11th Cir. 2006) (affirming summary judgment even though plaintiff presented evidence of hostility combined with temporal proximity).

In sum, Plaintiff cannot establish that he was terminated for requesting FMLA leave.  The undisputed record evidence demonstrates that OPR commenced its investigation regarding Plaintiff's failure to disclose outside employment prior to Plaintiff requesting FMLA leave, and that Plaintiff was terminated after OPR determined that Plaintiff violated Defendant's Standards of Employee Conduct.  The finding by OPR that Plaintiff violated Defendant's policies is an intervening event that severs an inference of causation.  *See Maack v. Sch. Bd. of Brevard Cty.*, No. 6:12-CV-612-ORL-28, 2013 WL 6050749, at *1 (M.D. Fla. Nov. 15, 2013).  Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff's employment, *i.e.*, his failure to disclose his involvement in various outside business ventures, even after being afforded multiple opportunities to do so.  UF at ¶¶29-35.

Defendant has met its initial burden of demonstrating the absence of a genuine issue of material fact as to Plaintiff's Complaint.  Having met its burden, the burden then shifted to Plaintiff to show by reference to the record that there is indeed a genuine issue of fact regarding Defendant's alleged discrimination and retaliation.  Plaintiff has not met this burden.  There is not even a scintilla of evidence to create a material issue of fact for a jury determination.  Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendant the Geo Group, Inc.'s Motion for Summary Judgment [DE 25] is granted.  In accordance with Fed. R. Civ. P. 58, final judgment will be entered by separate order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of July, 2018.

KENNETH A. MARRA
United States District Judge